UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:18-CV-00122-LLK

TOSHA NICOLE FRANKLIN                                                                                    PLAINTIFF

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for Social Security disability benefits. The fact and law summaries of the parties are at Dockets # 12 and 13. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. (Docket # 11.) The matter is ripe for determination.

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

## Background facts and procedural history

Plaintiff was born in April 1995. [Administrative Record ("AR") at 558.] In January 2015, she applied for supplemental security income benefits and child's disability insurance benefits, alleging she became disabled before age 22. [AR at 14.] She alleges disability solely due to mental impairments (affective disorder, anxiety disorder, post-traumatic stress disorder). [AR at 17.]

In May 2015, Plaintiff was examined at the request of the Commissioner by licensed clinical psychologist Lisa M. King, Psy.D. (Doctor of Psychology), HSP (Health Service Provider). Among other things, Dr. King made a "provisional" finding that Plaintiff would be markedly limited in her ability to sustain attention and concentration for even simple, repetitive tasks. [AR at 560.] Dr. King "suspected poor effort" and indicated a need to "rule out malingering." [*Id.*]

1

In June and September 2015, in light of Dr. King's findings and the record as a whole, the Commissioner's non-examining consultants Tonya Gonzalez, Psy.D., and Alex Guerrero, M.D., found no more than moderate limitation in any functional area. [AR at 74-78, 103-08.]

In June 2017, Plaintiff's treating psychiatrist John Sallee, M.D., completed the standard mental assessment form, finding that Plaintiff is no more than moderately limited in all 20 categories. [AR at 848-49.]

In July 2017, Plaintiff's therapist at Four Rivers Behavioral Health, Christine Vigil, LPCA (Licensed Professional Counseling Association) completed the same mental assessment form. [AR at 872-73.] Unlike Dr. Sallee, who found no more than moderate limitation, Ms. Vigil found that Plaintiff is extremely limited in 4 areas, markedly limited in 7 areas, moderately limited in 8 areas, and slightly limited in only 1 area (ability to be aware of normal hazards and take appropriate precautions). [*Id.*]

In her written decision, the ALJ found that Plaintiff has no vocationally significant physical limitation but has the following mental limitations:

> … [Plaintiff] is limited to understanding, remembering and carrying out simple one to two step instructions. She can sustain concentration, persistence and pace for two-hour segments of time for an eight-hour workday. She needs to avoid work that is production or quota-rated. Changes in the workplace should be rare or gradually introduced. She can have occasionally contact with coworkers and supervisors, but no contact with the public.

[AR at 18.]

In making the above mental residual functional capacity (RFC) determination, the ALJ gave no weight to Dr. King's opinion in light of Plaintiff's "failure to fully cooperate and put forth sufficient effort to interpret the assessment results." [AR at 24.] The ALJ gave great weight to the opinions of Drs. Gonzalez and Guerrero. [AR at 23.] The ALJ gave great weight to Dr. Sallee's opinion because it was "consistent with his treatment notes reflecting a positive response to medication management." [*Id.*] The ALJ gave little weight to Ms. Vigil's findings because they were "greater than can be supported by the treatment notes from Four Rivers as well as those of Dr. Sallee" and they were "not consistent with

[Plaintiff's] positive response to treatment and her ability to regain custody of and care for her three young children." [*Id.*]

At the administrative hearing, the ALJ presented two hypothetical questions to a vocational expert (VE). The first hypothetical contemplated an individual of Plaintiff's age, education, and prior work experience, with the above mental RFC. The VE testified that the individual could perform a significant number of jobs in the national economy such as bundle clerk, dryer attendant, and factory helper. [AR at 65-66.] Specifically, the VE testified that the job of bundle clerk is listed in the Dictionary of Occupational Titles (DOT) at 361-687-022 and there are 58,000 compatible bundle clerk jobs in the national economy; dryer attendant is DOT 581-686-018 and there are 22,000 compatible jobs; factory helper is DOT 520.687-022 and there are 35,000 compatible jobs. [AR at 65-66.] The second hypothetical contemplated an individual would be expected to "miss two days a month [of work] to deal with symptoms and treatment." [AR at 66.] The VE testified that "normally that [rate of absenteeism] would preclude all work in the national economy." [*Id.*]

**First Argument**

Plaintiff makes two arguments. As indicated above, the ALJ adopted as controlling the first hypothetical, which incorporated the ALJ's mental RFC findings. [AR at 65-66.] Among other things, the first hypothetical contemplated that the individual "cannot work at a production or quota rate." [AR at 65.] Plaintiff's first argument is that "a review of the DOT [i.e., Dictionary of Occupational Titles] description of jobs identified by the vocational expert [in response to the first hypothetical, i.e., bundle clerk, dryer attendant, factory helper] appear to represent production type quota jobs." (Docket # 12 at 12.) In support of her argument, Plaintiff appends to her fact and law summary copies of vocational information from the DOT and Occupational Information Network (O*NET) concerning the jobs. (Dockets # 12-1, 12-2, 12-3).

3

The jobs of bundle clerk and dryer attendant apparently do <u>not</u> require significant work at a production or quota rate. In *Scott v. Comm'r*, No. 1:10 CV 0061, 2011 WL 720198 (N.D. Ohio Jan. 25, 2011), the Court rejected Scott's argument that the job of bundle clerk requires any significant production expectancy:

> [The] job requires a markedly low aptitude ability for performing repetitive or short cycle work. In other words, when a task is completed or production needs are adjusted, the employee moves on to another task or is reassigned another task within the same occupational group arrangement. There is no requirement of any production expectancy affiliated with [the job].

*Id.* at *9. In *Burnett v. Comm'r*, No. 2:16-1637-MGL-MBG, 2017 WL 3835843 (D.S.C. Aug. 3, 2017), the Court noted that the job of dryer attendant requires "no fast-paced production deadlines." *Id.* at *10.

To the extent some bundle clerk, dryer attendant, and factory helper positions <u>do</u> require significant work at a production or quota rate, the VE testified that his testimony was consistent with the DOT. [AR at 66.] Therefore, one may reasonably assume that the VE identified a <u>reduced</u> number of jobs in the national economy, which were compatible with the first hypothetical.

**Second Argument**

As noted above, the ALJ gave great weight to Dr. Sallee's opinion, little weight to Ms. Vigil's opinion, and no weight to Dr. King's opinion. [AR at 23-24.] The ALJ adopted as controlling the first hypothetical, which incorporated the ALJ's RFC findings. [AR at 65-66.] The ALJ rejected the second hypothetical, which contemplated a disabling rate of absenteeism. [AR at 65-66.]

Plaintiff's second and final argument is that the ALJ's preference for the first hypothetical lacked an adequate basis in terms of supporting medical evidence:

> This [second, disabling] hypothetical more closely approached the impact of limitations opined by Dr. Sallee, the therapist [Ms. Vigil] and consultant Dr. King. The ALJ simply concluded on her own, without the help of a medical expert at the hearing, that the more restrictive opinions were inconsistent with the record as a whole. By making such a finding the ALJ is putting her self in the position of a medical expert and not just a fact finder. Her findings must be supported by substantial evidence, and not manufactured on her own. This is not appropriate and the decision of the ALJ should be reversed for this reason.

(Docket # 12 at 11-12.)

The argument is unpersuasive for two reasons. First, neither Dr. Sallee, nor Ms. Vigil, nor Dr. King indicated that Plaintiff would require a disabling rate of absenteeism. Second, the ALJ did not need medical expert testimony to justify preferring the opinion of a treating psychiatrist, Dr. Sallee, to that of a treating therapist, Ms. Vigil. This is because a treating physician's medical opinion is entitled to controlling or great weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). In contrast, an "LPCA [therapist] is not an acceptable medical source within the definition set forth by the regulations." *Stanley v. Comm'r*, No. 4:14CV-00080-HBB, 2015 WL 1980237, at *9 (W.D. Ky. April 30, 2015) (referencing 20 C.F.R. § 404.1513(a)). An LPCA "falls into the category of 'other sources' which are not entitled to the same controlling weight or deference to which the opinions of acceptable medical sources are normally entitled." *Id.* (citing *Smith v. Comm'r*, 482 F.3d 873, 876 (6th Cir. 2007)).

## Order

Because Plaintiff's arguments are unpersuasive and the ALJ's decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED and Plaintiff's complaint is DISMISSED.

March 11, 2019

Lanny King, Magistrate Judge
United States District Court